106 F.3d 400
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BUCHEIT INTERNATIONAL, INC.; Bucheit Investments, Inc.;
Joseph Bucheit & Sons Company; and B.J. Bucheit,
Jr., Plaintiffs-Appellants,
v.
AMERITRUST COMPANY NATIONAL ASSOCIATION, Defendant-Appellee.
 No. 95-4267.
 United States Court of Appeals, Sixth Circuit.
 Jan. 17, 1997.
 
 Before: GUY, RYAN, and COLE, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The plaintiffs Bucheit appeal the district court's Fed.R.Civ.P. 12(b)(6) dismissal of their state law complaint as barred by the applicable Ohio statute of limitation. Federal jurisdiction of this case is predicated on 12 U.S.C. § 632 which confers jurisdiction on the district courts in matters involving international banking transactions. We affirm the district court's decision in this case.
 
 I.
 
 2
 The plaintiffs, referred to hereafter as "Bucheit," are in the construction business. On February 26, 1981, Bucheit entered into a $26 million construction agreement with H.R.H. Prince Al Saud of Saudi Arabia, to construct a shopping plaza in Riyadh, Saudi Arabia. Although it is unclear from the record, apparently, Bucheit subsequently breached that agreement.
 
 
 3
 On January 15, 1985, Bucheit and Prince Al Saud entered into a settlement agreement regarding payment and the completion of work that was still to be done at the shopping center. Prince Al Saud agreed to accept from Bucheit an irrevocable letter of credit in the amount of $1.3 million. A condition of the settlement was that the letter of credit involve J.P. Morgan (Suisse) S.A. in Geneva, Switzerland ("JPM Suisse"). In February 1985, Bucheit contacted Mahoning National Bank to arrange the letter of credit. Because of J.P. Morgan's involvement, Mahoning requested that Ameritrust issue the letter of credit. Ameritrust issued the letter of credit with an expiration date of February 5, 1986, and Mahoning agreed to act as guarantor.
 
 
 4
 In November and December 1985, JPM Suisse received a request by Prince Al Saud for payment of approximately $1.1 million. That request was accompanied by certain specified documents. The documents were examined by JPM Suisse, by Morgan, and by Ameritrust, all of whom determined that they conformed to the specifications of the letter of credit. In December 1985, JPM Suisse paid the prince; Morgan, as confirming bank reimbursed JPM Suisse; Ameritrust, as the issuing bank, reimbursed Morgan; Mahoning, as guarantor, reimbursed Ameritrust; and Bucheit reimbursed Mahoning.
 
 
 5
 Bucheit later claimed that Ameritrust and JPM Suisse paid the funds without examining the documents and without ensuring compliance with the terms of the letter of credit. Bucheit originally brought suit against Ameritrust in 1986 but voluntarily dismissed the case after Ameritrust filed a motion to dismiss. Bucheit Int'l, Inc. v. Ameritrust, N.A., No. C86-1329 (N.D.Ohio 1986).
 
 
 6
 Bucheit filed this lawsuit against Ameritrust and JPM Suisse in September 1993. Subsequently, the district court granted JPM Suisse's motion for summary judgment finding that, because all of the material transactions including JPM Suisse took place in New York, that state's banking law applies. Further, because Bucheit's cause of action fell outside of the New York banking law's six-year statute of limitations, it was barred. Bucheit does not appeal this decision.
 
 
 7
 Ameritrust, now Society National Bank ("Society"), filed a Rule 12(b)(6) motion to dismiss based on the six-year statute of limitations found in Ohio's banking code, Ohio Rev.Code Ann. § 1101.08(F) (1968) (current version at section 1109.69(F) (Baldwin 1996)).
 
 
 8
 Ohio Rev.Code Ann. § 1109.69, in pertinent, provides:
 
 
 9
 (A) Every bank shall be required to retain or preserve the following bank records and supporting documents for only the following periods of time:
 
 
 10
 ....
 
 
 11
 (2) For six years:
 
 
 12
 ....
 
 
 13
 (c) Official checks, drafts, money orders, and other instruments for the payment of money issued by the bank and which have been cancelled, after the date of issue;
 
 
 14
 ....
 
 
 15
 (E) A bank may dispose of any records which have been retained or preserved for the period set forth in divisions (A) and (B) of this section.
 
 
 16
 (F) Any action by or against a bank based on, or the determination of which would depend upon, the contents of records for which a period of retention or preservation is set forth in divisions (A) and (B) of this section shall be brought within the period of time for which such record must be retained or preserved.
 
 
 17
 Ohio Rev.Code Ann. § 1109.69 (Baldwin 1996). The magistrate judge recommended denial of the Rule 12 motion, but the district court disagreed and dismissed the complaint Bucheit now appeals.
 
 II.
 
 18
 Bucheit argues that the district court erred in dismissing the case pursuant to section 1109.69(F) because that section would bar only certain actions based solely on bank records. Here, Bucheit claims, it has a breach of contract action, not one based on bank records, and that the breach of contract claim can be proved with evidence other than bank records.
 
 
 19
 Bucheit acknowledges that, by enacting the six-year limitation period in section 1109.69(F), the Ohio legislature intended to protect banks from having to defend themselves after destroying bank records pursuant to sections 1109.69(A)(2)(c) and 1109.69(E). Nevertheless, Bucheit argues, the legislature did not intend to bar all actions against banks after six years, but only actions in which the bank had destroyed records in reliance on the statute. Bucheit argues that Society has not claimed to have destroyed the relevant records, and therefore, the statute does not apply.
 
 
 20
 There is only one Ohio Supreme Court case dealing with this issue, and both parties claim it supports their position. In Abraham v. National City Bank Corp., 553 N.E.2d 619 (Ohio 1990), the Ohio Supreme Court held that section 1101.08(F) (now codified at section 1109.69(F)) barred the plaintiff's action against the bank because bank records, without which the bank was unable to defend itself, had been destroyed pursuant to section 1109.69(E). Id. at 621. In Abraham, the plaintiff had misplaced her bank passbook from 1972 until 1985. The last entry in the passbook, dated 9/30/72, showed a balance of $13,266.83. Abraham filed her claim in May 1986. She attributed the late claim of ownership to the fact she had not received notice that the bank changed ownership or that her local branch had closed. The court found constructive notice in the fact that Abraham should have noticed that she had not received Form 1099 with which to report the interest earned in the account on her taxes. Id.
 
 
 21
 The court rejected Abraham's argument that the action was founded on breach of contract. Finding the bank records to be crucial evidence in Abraham's suit, the court held that section 1109.69(F) applied and the action barred. Id. The court stated:
 
 
 22
 The intent and language of R.C. 1101.08(F) [ (now section 1109.69(F)) ] are clear. A bank would be foolish to destroy its records after six years in reliance on R.C. 1101.08(E) without the assurance provided in R.C. 1101.08(F) that it will not thereby leave itself open to litigation without the documents necessary to defend itself.
 
 
 23
 Id. Additionally, "[w]e are not unmindful of the potential for harsh results under the clear mandate of the statute, but this is a legislative problem." Id. at 622.
 
 
 24
 Bucheit argues that the Abraham court's holding was based on the fact that the bank records were actually destroyed. Bucheit argues that, in this case, there is no evidence that the bank records were actually destroyed, and if they had been, surely, Society would have said so; since it has not, an inference may be drawn that the records exist. Bucheit argues that because Society moved in the lower court to stay discovery pending a decision on the Rule 12(b)(6) motion to dismiss, Society was "holding out" on admitting the records exist. The district court addressed this issue and noted, "[t]here may be many reasons to retain records other to defend a lawsuit. If courts hold that a bank's liability depends on whether or not it has been foolish enough to retain its records, no such records will be kept."
 
 
 25
 This court's review of a district court's dismissal of an action on Rule 12(b)(6) grounds is de novo. LRL Properties v. Portage Metro Hous. Auth., 55 F.3d 1097, 1103 (6th Cir.1995); Dugan v. Brooks, 818 F.2d 513, 516 (6th Cir.1987).
 
 
 26
 Section 632 of Title 12 of the United States Code, the statute which confers jurisdiction on the district courts in matters involving international banking transactions, requires federal courts to apply the appropriate state substantive law, pursuant to the Erie Doctrine. A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp., 62 F.3d 1454 (D.C.Cir.1995). Under the Erie Doctrine, "a federal court in a diversity case applies the law of the state in which it sits, including the state's choice of law provisions." Davis v. Sears, Roebuck and Co., 873 F.2d 888, 892 (6th Cir.1989); see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Thus, the law of Ohio should be applied in this case, as that is the state in which the court below sits. This court reviews de novo the district court's determinations concerning Ohio substantive law. J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1483 (6th Cir.1991); see Salve Regina College v. Russell, 499 U.S. 225 (1991).
 
 
 27
 The Ohio Supreme Court has mandated that, in interpreting statutes:
 
 
 28
 [I]t is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly.
 
 
 29
 Shover v. Cordis Corp., 574 N.E.2d 457, 461 (Ohio 1991).
 
 
 30
 The language of Ohio Rev.Code Ann. § 1109.69(F) is clear. If determination of the cause of action depends upon the bank records, the statute applies. Abraham, 553 N.E.2d at 621. Bucheit alleges that Society did not fulfill its obligation with respect to the letter of credit. The letter of credit and supporting documents are bank records expressly named in Ohio Rev.Code Ann. § 1109.69(A)(2)(c) and must be kept for six years. Section 1109.69(E) allows destruction of those records after the period set forth in section 1109.69(A)(2)(c). Section 1109.69(F) mandates that an action dependant on those records be brought within six years.
 
 
 31
 That section does not require the records to actually have been destroyed: "[a]ny action ... against a bank ... the determination of which would depend upon[ ] the contents of records [specified in the section] ... shall be brought within" six years. Ohio Rev.Code Ann. § 1109.69(F). Although Abraham involved the actual destruction of bank records, the Abraham court did not interpret the statute to require actual destruction of documents.
 
 
 32
 Finally, Bucheit does not address its prior attempt to adjudicate this issue in 1986. Bucheit Int'l. Inc. v. Ameritrust, N.A., No. C86-1329 (N.D.Ohio 1986). Any conceivable harshness in applying the statute of limitations was arguably mitigated by Bucheit's own actions in voluntarily dismissing its complaint and waiting seven years to re-file another complaint.
 
 III.
 
 33
 Bucheit next argues that the fifteen-year general statute of limitations provision of Ohio Rev.Code Ann. § 2305.06 takes precedence over the special banking statute of limitations of six years found in Ohio Rev.Code Ann. § 1109.69. Ohio Rev.Code Ann. § 1.51 provides that if general and special provisions conflict, the specific provision takes precedent as an exception to the general provision unless the legislature provides otherwise.
 
 
 34
 The Ohio Supreme Court conclusively decided this issue in Abraham. Abraham had argued that the limitation periods for fraud and contract actions prevailed over section 1101.08(F) (now section 1109.69(F)). The court held, "It is clear that the statutes of limitations otherwise applicable to Abraham's action against [the appellee] must give way to the specific six-year statute of limitations contained in R.C. 1101.08(F)." Abraham, 553 N.E.2d at 622. Pursuant to the Erie Doctrine, the holding in Abraham effectively determines what this court's decision must be. We therefore affirm the district court's decision that section 1109.69(F) supplies the controlling limitations period.
 
 IV.
 
 35
 Finally, Bucheit argues that section 1109.69(F) violates the open courts provision of Article I, section 16 of the Ohio Constitution. Bucheit cites no authority for its view, but nevertheless claims that section 1109.69(F) unconstitutionally "removes the remedy for the injuries upon which a breach of contract claim is reached." We think this claim is patently meritless and we hold that section 1109.69(F) fully comports with Ohio constitutional principles. Chambers v. Merrell-Dow Pharm., Inc., 519 N.E.2d 370 (Ohio 1988).
 
 
 36
 The judgment of the district court is AFFIRMED.